UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL OSTERMAN

       Plaintiff,

v.

GENERAL R.V. CENTER, INC.,

       Defendant.

_____/

Case No. 19-10698

Stephanie Dawkins Davis
United States District Judge

R. Steven Whalen
United States Magistrate
Judge

**OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (ECF NO. 19), DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (ECF NO. 20), AND PLAINTIFF'S MOTION TO STRIKE
(ECF NO. 28)**

## I.   INTRODUCTION

This matter concerns alleged violations of the Fair Labor Standards Act of
1938 ("FLSA"), 29 U.S.C. § 207(a), and the Michigan Workforce Opportunity
Wage Act of 2014 ("MWOWA"), Mich. Comp. Laws § 408.414a.  Plaintiff
Michael Osterman alleges that his employer, Defendant General R.V. Center, Inc.,
failed to pay him for all hours worked and at a rate of 1 ½ times his regular rate of
pay for all hours worked in excess of 40 hours per week.  (ECF No. 1, ¶¶ 26–27).
In response, General R.V. contends that Osterman was properly compensated
under a "flat rate system" that exempted his compensation from the overtime
requirements of these statutes.  (ECF No. 3, PageID.14).

Before the court are Osterman's partial motion for summary judgment, (ECF No. 19), and General R.V.'s motion for summary judgment, (ECF No. 20). Also pending is Osterman's motion to strike, filed in reaction to General R.V.'s untimely response to his partial summary judgment motion. (ECF No. 28). The court has determined that a hearing on the subject motions is not necessary. For the reasons set forth below, the court **GRANTS** Osterman's motion for partial summary judgment, (ECF No. 19), and **DENIES** General R.V.'s motion for summary judgment, (ECF No. 20). The court also **DENIES** Osterman's motion to strike. (ECF No. 28).

## II.    FACTUAL BACKGROUND

General R.V. Center sells and services recreational vehicles in Michigan and across the country. (ECF No. 19-4, PageID.155–56). Plaintiff, Michael Osterman, worked as a pre-delivery inspection technician for General R.V. from May 2015 until January 2019. (ECF No.1, PageID.2; ECF No.3, PageID.9). As an inspection technician, Osterman serviced units awaiting sale as well as those that had just been sold. (ECF No. 19-4, PageID.157–58; ECF No. 1, PageID.2; ECF No. 3, PageID.9). Christopher Dietrich, General R.V.'s Senior Business Consultant of Operations, testified that technicians like Osterman performed the same work ("pre-prep" work) regardless of whether they performed it before or after a sale. (ECF No. 19-4, PageID.158).

General R.V. compensated Osterman at all relevant times under a flat rate system. (*Id.* at PageID.159). General R.V. implemented the flat rate system company-wide[1] in 1997. (*Id.* at PageID.155, 161). Under this system, General R.V. calculated Osterman's pay by multiplying his hourly rate by the number of flat rate hours for a particular assignment. (*Id.* at PageID.159). Industry standards predetermined these flat rate hours, essentially basing them on the number of hours that a technician generally should take to complete a given task. (*Id.* at PageID.159). General R.V. paid Osterman these flat rate hours, regardless of whether he worked longer or shorter than that amount. (ECF No. 19-2, PageID.139). General R.V. determined Osterman's hourly rate based on his skill level. (ECF No. 19-4, PageID.159). General R.V. did not pay Osterman overtime hours for hours worked in excess of 40 hours per week during any of the time he worked there. (ECF No. 19-3, PageID.149). Osterman argues that this failure to pay him overtime hours violated the FLSA and the MWOWA.

III.   **MOTION FOR SUMMARY JUDGMENT**

   A.   **Standard of Review**

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the

---

[1] General R.V. has 13 locations, six of which are in Michigan. (ECF No. 19-4, PageID.155). They have approximately 1,900 employees. (*Id.*)

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that

the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251–52 (1986)). Additionally, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party. *Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-moving

party to come forward with "specific facts showing that there is a genuine issue for

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find

for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004) (quoting *Anderson*, 477 U.S. at 252). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

In assessing whether there is a genuine dispute about a material fact, the court must determine if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

B.    **Fair Labor Standards Act of 1938**

Osterman brings this case under the overtime provisions of the FLSA and

the MWOWA.  This district has recognized that the overtime provisions of these

acts "largely parallel each other" so they are analyzed in the same manner.

*Arrington v. Mich. Bell Telephone Co.*, 746 F. Supp. 2d 854, 857 (E.D. Mich.

2010); *Allen v. Lincare, Inc.*, No. 16-CV-11996, 2018 WL 352362, at *8 n.2 (E.D.

Mich. Jan. 10, 2018) (citing *Dikker v. 5-Star Team Leasing*, 243 F. Supp. 3d 844,

854 n.3 (W.D. Mich. 2017)).  Because neither party has indicated that the court

should treat this analysis any differently, Osterman's claims are addressed here

through a singular analysis.

Section 207(a) of the FLSA entitles employees to receive at least 1 ½ times

their regular rate of pay for hours they work in excess of 40 hours per week unless

they are exempt from the overtime provisions of the Act.  29 U.S.C. § 207(a).  It is

undisputed that Osterman worked more than 40 hours per week and was not

compensated at 1 ½ times his regular rate of pay.  (ECF No. 19-3, PageID.149).

Therefore, unless Osterman was exempt from the overtime provisions of the

FLSA, General R.V. violated the plain language of the Act.

FLSA overtime exemptions are "affirmative defense[s] on which the

employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S.

188, 196–97 (1974); *see also Douglas v. Argo–Tech Corp.*, 113 F.3d 67, 70 (6th

Cir. 1997).  Those exemptions "are to be narrowly construed against the employers

seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

The employer bears the burden of proving that the employee meets each of the

exemption's requirements by "clear and affirmative evidence."  *Thomas v.*

*Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007).  Rather than

being a heightened evidentiary standard, however, the Sixth Circuit has clarified

that the defendant must establish the elements of the exemption by a

preponderance of the evidence.  *Renfro v. Indiana Mich. Power Co.*, 497 F.3d 573,

576 (6th Cir. 2007).  The ultimate question of whether an employee is exempt from

overtime wage requirements is a question of law.  *Ale v. TVA*, 269 F.3d 686, 691

(6th Cir. 2001).

General R.V.'s argument is that Osterman is exempt from the overtime

provisions of the FLSA because it paid him on a commission basis.  (ECF No. 20,

PageID.202–207); *see* 29 U.S.C. § 207(i).  This exemption provides as follows:

> No employer shall be deemed to have violated subsection
> (a) by employing any employee of a retail or service
> establishment for a workweek in excess of the applicable
> workweek specified therein, if (1) the regular rate of pay
> of such employee is in excess of one and one-half times
> the minimum hourly rate applicable to him under section
> 206 of this title, and (2) more than half his compensation
> for a representative period (not less than one month)
> represents commissions on goods or services.  In
> determining the proportion of compensation representing
> commissions, all earnings resulting from the application
> of a bona fide commission rate shall be deemed

> commissions on goods or services without regard to
> whether the computed commissions exceed the draw or
> guarantee.

29 U.S.C. § 207(i).

Put another way, in order to claim this exemption, General R.V. must demonstrate the following three elements: (1) General R.V. qualifies as a "retail or service establishment"; (2) General R.V. paid Osterman a regular rate of more than 1 ½ times the federal minimum wage for each hour he worked; and (3) Osterman received more than half of his compensation (for a representative period of not less than one month) in the form of commissions earned from the sale of goods or services. *See* 29 U.S.C. § 207(i); 29 C.F.R. § 779.412.

It is undisputed that General R.V. is a retail or service establishment, engaging in the business of selling and servicing recreational vehicles. (ECF No. 19-4, PageID.156). And General R.V. concedes that Osterman's regular hourly rate exceeded 1 ½ the federal minimum hourly rate at all relevant times. (ECF No. 19-2, PageID.135) (providing that Osterman was paid $20 per hour for the first 90 days, then at a flat rate of $20 per hour billed until February 29, 2016, at which time the flat rate increased from $20 per hour billed to $24 per hour billed); (*see also* ECF No. 19-7) (providing that, after a 30-day training period in which Osterman was paid $20 per hour, Osterman would be paid "on a flat rate at a rate

of $20 per hour billed").  Therefore, this case rests on whether General R.V. paid

Osterman a commission for his services.

### C.   Flat Rate Systems of Pay May Constitute Commissions

Neither the FLSA nor its implementing regulations define the term

"commission."  *Wilks v. Pep Boys*, 278 F. App'x. 488, 489 (6th Cir. 2008).  Nor

has the Sixth Circuit issued binding authority on this issue.  *Whitt v. Ziegler Tire*

*and Supply Co.*, No. 5:14CV886, 2015 WL 4715605, at *4 (N.D. Ohio Aug. 7,

2015) (citing *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *11 (M.D.

Tenn. Sept. 26, 2006), *aff'd, Wilks*, 278 F. App'x. 488 ).  Indeed, as the Eleventh

Circuit has noted, the meaning of "commission" "is an issue that finds little

illumination from the sparse case law and the vague references in statutes and

regulations."  *Klinedinst v. Swift Investment, Inc.*, 260 F.3d 1251, 1254 (11th Cir.

2001).  Nevertheless, the parties contend that, to constitute a commission under the

FLSA, there must be some proportionality between an employee's compensation

and the amount charged to the customer.  (ECF No. 19, PageID.123–24; ECF No.

20, PageID.203–04).  Upon examination of the relevant authorities, the court

concludes that a flat rate system of compensation, like the one at issue here,

constitutes a commission if, and only if, the wages paid to a flat-rate employee are

somewhat proportional to the charges passed onto the customer.

### 1.    Sixth Circuit Caselaw

Within this circuit, both the Middle District of Tennessee and the Northern

District of Ohio have addressed whether a flat rate system constitutes a

commission within the meaning of Section 207(i) of the FLSA.  *See Wilks*, 2006

WL 2821700; *Whitt*, 2015 WL 4715605.[2]  As explained below, both of these cases

found that, for such a system to be a commission, there must be some

proportionality between the employee's labor and the price paid by the customer.

In *Wilks*, the defendant sold automotive parts and accessories and performed

automotive services and repairs.  2006 WL 2821700, at *1.  The *Wilks* plaintiffs

included those who were "compensated pursuant to the defendant's complex, flat-

rate payment system."  *Id.*  The district court described that system of

compensation as follows,

> The defendant adopted its flat-rate compensation system
> in 1993, after rejecting a system in which employees
> received a direct percentage of the labor costs charged to
> customers.  Under the current method, flat-rate
> employees are credited with a certain number of "labor
> hours" for each service job they perform.  These "labor
> hours" are not calculated based on how long an employee
> actually took to do the job, but rather are computed
> according to predetermined standards as to how long
> each job should take to complete.  At the end of each
> week, the employee's labor hours are multiplied by his

---

[2] Although not a case dealing with automotive services and parts, the Northern District of Ohio
in another case, cited favorably to *Wilks*. *Horn v. Digital Cable & Comm., Inc.*, No. 1:06 CV
325, 2009 WL 4042407, at *4–5 (N.D. Ohio Feb. 11, 2009).  In that case, the court found the
defendant's compensation system to be a "commission" because "unlike the payment system in
*Wilks*, proportionality exists in the instant case . . . ."  *Id.* at *5.

flat rate, which varies by plaintiff between $14.00 and $23.70, in order to determine the employee's flat-rate wages for that week.

The defendant also uses a complex scheme under which it pays employees a Variable Benefit Rate (VBR), which is calculated by multiplying a varying percentage of the employees' flat rate by the number of hours they actually clocked (as opposed to their "labor hours"), when the VBR total exceeds their flat-rate total for that week, *e.g.*, in periods of low productivity. This varying percentage is calculated based on each particular employee's productivity over the preceding twelve weeks. The plaintiffs explain that, under these two methods, the employees receive either their flat-rate wages or their VBR-related wages, whichever is greater. The defendant describes this dichotomy differently. It maintains that the employees always receive their flat-rate pay and that, for pay periods when the VBR-based wages exceed the flat-rate ones, it "pays the difference in the form of Mechanic's Supplemental Pay ... in addition to the commission."

The price that is charged to a Pep Boys customer for a particular service or repair is arguably based on the number of labor hours allocated to that task, although the parties vehemently disagree as to the extent of the correlation between the price the customer pays and the number of labor hours for which the employee who performed the task is compensated.

*Id.* at *17 (internal citations omitted). The defendant in *Wilks* made the same

argument as here: the flat-rate plaintiffs are exempt from the overtime provisions

of the FLSA. *Id.* at *8.

*Wilks* held that "wages paid to flat-rate employees must be at least somewhat

proportional to the charges passed on to customers" in order to qualify as a

commission under the FLSA. *Id.* at *15. In concluding that the flat rate system at issue in that case did not constitute a commission, *Wilks* reasoned that there was no correlation between the flat-rate compensation and labor costs, as the labor costs did not fluctuate with the amount paid to the employee. *Id.* at *18. That reasoning was then affirmed by the Sixth Circuit in an unpublished decision, "[g]iven that the relevant authority supports a proportionality requirement to the overtime pay exemption under the FLSA, and that courts must interpret such exemptions narrowly and against the employer." *Wilks*, 278 F. App'x at 489 (citation omitted).

*Whitt* involved an employee of a chain of automotive repair and tire sale retail stores. 2015 WL 4715605, at *1. Like Osterman, the *Whitt* plaintiff was compensated under a flat rate system of pay, which worked as follows,

> Rather than paying its technicians an hourly rate for each hour actually worked, Ziegler calculates biweekly pay under the Rate Compensation Program by multiplying an individually-assigned flat hourly rate by the billable hours that the technician "books" for completing jobs during the pay period. Each time a technician receives a new job, he first consults the All–Data Flat–Rate Guide, a database that estimates the number of hours that a job should take. The technician then assesses the particular vehicle to determine if the job may take longer than recommended to complete. If the technician believes more time is necessary, the adjusted number of hours is presented to the customer for approval. *Upon completion of the job, the technician "books," or is credited for, a number of billable hours that corresponds to the hours of labor charged to the customer on the final invoice-even if the job is actually completed in a shorter amount of time than the number that appears on the invoice. If the*

> *customer received a discount on the total cost, the*
> *technician does not lose credit for the billable hours*
> *worked on the job.*

*Id.* (emphasis added).  The Northern District of Ohio concluded that "in order to qualify as 'commissions on goods or services,' [the defendant] must demonstrate some proportionality between the compensation it paid to [the plaintiff] under [the defendant's] Flat Rate Compensation Program and the amount charged to the customer for the service rendered." *Id.* at *4.  *Whitt* concluded that the compensation system at issue constituted a commission,

> [The defendant's] technicians earn compensation for the
> same number of hours charged to the customer as labor.
> When additional time is necessary to complete a job-for
> example, because the car's age or rust made the
> completion of the job more difficult—*the labor hours*
> *charged to the customer*, as well as the hours that Whitt
> booked for the job, increased correspondingly.  The
> increase in labor reflected an increase in the value of the
> service rendered to the customer. And, in booking a
> matching number of billable hours for performing a more
> time-consuming and therefore more valuable job, Whitt
> received a proportional increase in compensation in the
> same way that a car salesperson earns more commission
> on the sale of a Ferrari than a Ford Focus.  Whitt's pay is,
> therefore, proportional to the work done and the value of
> that work to the customer.

*Id.* at *7 (emphasis added).

Of course, neither of these decisions are binding.  *See United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007) (finding that unpublished decisions are not precedentially binding under the doctrine of stare decisis, but that they can be

used as persuasive authority).  But the court finds them persuasive, as they provide a thorough and well-reasoned examination of the issue.

### 2.    Out-of-Circuit Caselaw

The Seventh and Eleventh Circuits have also considered whether a flat rate system (or something very similar to it) constitutes a commission, as has the Eastern District of Virginia.  *See Klinedinst*, 260 F.3d 1251; *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505 (7th Cir. 2007); *Herrara v. TBC Corp.*, 18 F. Supp. 3d 739 (E.D. Va. 2014).  As explained below, each of these cases, at minimum, does not "undermine the need for proportionality in any commission-based system."[3] *Wilks*, 2006 WL 2821700, at *14 (describing *Klinedinst*).

In *Klinedinst*, the plaintiff, an automobile painter for an auto repair and body shop, was compensated according to a repair estimate.  260 F.3d at 1253.  The labor portion of the estimate was calculated by multiplying the predetermined "flag hours" by the auto shop's hourly rate.  *Id.*  The Eleventh Circuit held that this flag hour system constituted a commission under the FLSA.  Although *Klinedinst* did not address the issue of proportionality, the price charged to the customer included a labor portion.  *Id.*  Moreover, in reaching its holding, the Eleventh Circuit found

---

[3] Although not a case concerning the auto repair industry, the Third Circuit, in *Parker v. NutriSystem, Inc.*, "decline[d] to adopt a test that requires a commission, under § 7(i), to be strictly based on a percentage of the end cost to the consumer."  620 F.3d 274, 283 (3rd Cir. 2010).  As *Herrera* noted, "[t]his appears to be consistent with the majority view that the § 207(i) exemption requires some correlation between labor hour credit given to employees and labor costs passed on to customers."  *Herrera*, 18 F. Supp. 3d at 746–47.

persuasive, among other things, Section 21h04(d) of the Wage and Hour Division

of the Department of Labor's Field Operations Handbook.  *Id.* at 1255.  Section

21h04(d) provides,

> Some auto service garages and car dealerships
> compensate mechanics and painters on the following
> basis:  The painter or mechanic gets so much a "flat rate"
> hour for the work he or she performs.  A "flat rate" hour
> is not an actual clock hour.  The painter or mechanic may
> work only 7, 8 or 9 hours a day and still receive credit for
> 10, 11 or 12, etc., flat rate hours depending upon how
> much work he or she has done.  *Each job is assigned a
> certain number of hours for which the customer is
> charged*, regardless of the actual time it takes to perform
> the job.  The employee is given a certain proportion of
> that charge expressed in terms of so many dollars and
> cents per "flat rate" hour rather than in terms of a
> percentage of the charge to the customer.  The dealer
> does not change the employee's share per flat rate hour if
> the charge to the customer is changed.  In such situations
> Wage–Hour will not deny that such payments represent
> "commissions on goods or services" for purposes of Sec.
> 7(i) (see IB 778.117 and 779.413(b)).  Such employment
> will qualify for exemption under Sec. 7(i) provided all
> the other tests of the exemption are met.

*Id.* (emphasis added).  Thus, the provision of the Field Operations Handbook on

which the Eleventh Circuit relied supports the proposition that there must be some

proportionality between an employee's labor and the price charged to the

customer.

The *Yi* defendant operated a chain of auto repair shops.  *Yi*, 480 F.3d at 509.

Yi was compensated as follows:

> [The defendant] calculates the number of hours normally
> required to do a given type of repair (these are called
> "booked hours") and multiplies that number by a dollar
> figure. *The product of this multiplication is the labor*
> *price of the repair to the customer.* Sterling adds
> material costs to the labor price to come up with a final
> price. A team of mechanics is then assigned to the job.
> Each member of the team keeps track of the hours he
> works on the job. When it's completed and the hours of
> the team members are added up, Sterling determines each
> member's compensation by multiplying (1) the number
> of booked hours for the job by (2) the ratio of the team
> member's actual hours worked to the total hours worked
> by the team, and then by (3) a wage, per booked (not
> actually worked) hour, based on the skill or quality of the
> individual team member.

*Id.* (emphasis added). The Seventh Circuit noted that "[t]he essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold," and held that the defendant's compensation system is "a bona fide commission system." *Id.* at 508, 511. In so holding, the Seventh Circuit cited, among other things, *Klinedinst* and Section 21h04(d) of the Field Operations Handbook. *Id.* at 508, 510. Thus, although the Seventh Circuit did not expressly hold that there must be some proportionality between an employee's compensation and the price charged to the customer, the compensation system at issue was proportionate, and it relied in part on the section of the Field Operations Handbook that underscores the importance of proportionality.

The *Herrara* plaintiffs worked as mechanics for the defendant, a retail establishment offering automotive repair services and selling a variety of parts and accessories to the general public.  18 F. Supp. 3d at 740.  The Eastern District of Virginia found that "[t]here appears to be judicial consensus that some element of proportionality is essential to qualify under § 207(i) as a commission based compensation plan" and noted that "as the Seventh Circuit suggested in *Yi*, the proportionality need not be as formal or mathematically precise . . . ." *Id.* at 747. The district court upheld the system of compensation at issue, noting that "although the flat rate compensation formula has variable and fixed rate components, ultimately the employee's salary is the equivalent of a portion of the customer's bill.  His or her compensation is linked to the cost passed on to the customer." *Id.*  Simply put, the district court held that *some* proportionality between the employee's compensation and the price paid by the customer is necessary for a flat rate system to constitute a commission under the FLSA.

Outside of the auto-repair industry, several courts have also relied on some amount of proportionality in determining whether a compensation scheme qualifies as a commission.  The Third Circuit, in *Parker v. NutriSystem, Inc.*, while "declin[ing] to adopt a test that requires a commission, under § 7(i), to be strictly based on a percentage of the end cost to the consumer," noted, as one of several factors, that "when the flat-rate payments made to an employee based on that

employee's sales are proportionally related to the charges passed on to the

consumer, the payments can be considered a bona fide commission rate."  620 F.3d

274, 283 (3d Cir. 2010); *see also Johnson v. Wave Comm. GR LLC*, 4 F. Supp. 3d

423, 442 (N.D.N.Y. 2014) ("[T]here must be proportionality between the value of

the goods or services sold, and the rate paid to the employee.") (quoting *Owopetu*

*v. Nationwide CATV Auditing Servs., Inc.*, No. 5:10-cv-18, 2011 WL 883703, at *4

(D. Vt. Mar. 11, 2011));

### 3.    *DOL Publications*

General R.V. attaches, as an exhibit to its opening brief, a 2006 opinion

letter by the Wage and Hour Division of the U.S. Department of Labor—more

specifically, No. FLSA2006-15NA.  (*See* ECF No. 20-4).  In this opinion letter,

DOL determined whether detailers and painters employed by an automobile

dealership were paid on a commission basis.  (*See id.*)  Under the payment system

at issue, "detailers and painters are not paid according to their clock hours; rather,

they are paid, [sic] according to the flag hours accumulated during the pay period

multiplied by their flag rate per hour." (*Id.* at PageID.218).  The flag hour system

at issue in that case was essentially identical to the flat rate hour system at issue

here. (*Id.* at PageID.217).

DOL concluded that the flag hours constituted a commission under the

FLSA because "the amount of the payment appears to be related to the value of the

services performed." (*Id.* at PageID.218).  In so holding, it relied on Section

21h04(d) of the Field Operations Handbook—the same section on which the

Eleventh and Seventh Circuits relied.  For this reason, as noted in *Wilks*, this

opinion letter "seems to reflect a DOL requirement that, in order to be considered a

commission under Section 7(i), an employee's compensation must somehow be

linked to the cost passed on to the customer."  *Wilks*, 2006 WL 2821700, at *14

(discussing Dep't of Labor Op. Ltr., No. FLSA2006-15NA).

       An opinion letter by the DOL is, of course, not binding on this court.  But

"the Supreme Court has indicated that an opinion of the Administrator of the Wage

and Hour Division of the Department of Labor has persuasive value if the position

of the Administrator is well-considered and well-reasoned."  *Fazekas v. Cleveland

Clinic Found. Healthcare Ventures, Inc.*, 204 F.3d 673, 677 (6th Cir. 2000) (citing

*Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)).  The weight given to

administrative decisions should depend upon "the thoroughness evident in its

consideration, the validity of its reasoning, its consistency with earlier

pronouncements, and all those factors which give it power to persuade, if lacking

power to control."  *Id.* at 677–78 (quoting *Skidmore*, 323 U.S. at 140); *see also Air

Brake Sys., Inc. v. Mineta,* 357 F.3d 632, 643 (6th Cir. 2004) (noting that "federal

courts give respectful consideration to authoritative interpretations that lack the

force of law, but that nonetheless have the power to persuade") (internal quotation

omitted).  The court finds this DOL opinion letter to be persuasive because it supports the proposition, articulated in the majority of the caselaw, that there must be some proportionality between the employee's compensation and the price paid by the customer.

### D.    General R.V. Fails to Show that its Flat Rate System of Compensation was a Commission-Based System

Osterman argues that there was no proportionality between his pay and the price charged to the customer because he conducted maintenance work on units before they were sold at the predetermined flat rate and the price the customer paid for the unit was later negotiated by the sales department.  (ECF No. 19, PageID.126).  The court concludes that, given the Sixth Circuit's instruction that the affirmative defense is to be narrowly construed against the employer, General R.V. has not met its burden of proof that its system of compensation qualifies as a commission within the meaning of Section 207(i) of the FLSA.

For starters, General R.V. declined to provide business records, such as copies of customer receipts, that could readily indicate whether the price paid by the customer reflected, at least in part, Osterman's (or any other predelivery inspection technician's) labor.  Indeed, the only business record that General R.V. has provided is an agreement signed by Osterman acknowledging the flat rate system of compensation.  (ECF No. 20-3).

The bulk of the evidentiary record in this case consists of Dietrich's deposition testimony, which this court has examined in full.  In his deposition, Dietrich makes several statements that imply that the cost of Osterman's labor is passed onto the customer.  But individually and collectively, these statements fall short.

First, Dietrich states that "technicians bill out time."  (ECF No. 19-4, PageID.158).  But, of course, this statement does not say to whom the time is billed.  Hence, it does not resolve the court's inquiry of whether the price paid by the customer reflected Osterman's labor.

Second, Dietrich testified that "[a] service advisor will sometimes write estimates [for maintenance repairs] for the customer based on a variety of things. That estimate is the guideline for the technician.  That's his number that he's shooting to beat . . . ." (*Id.* at PageID.159).  These statements could be interpreted to mean that the customer's estimate factored in the technician's labor.  But, given that the court is to narrowly construe the affirmative defense against the employer, this conclusion is a stretch.  And, though somewhat ambiguous, it appears that this statement refers to maintenance/warranty work that is performed after technicians like Osterman perform their pre-prep work.  (ECF No. 19-4, PageID.159).  In that case, these statements may shed light on whether other technicians are paid on a commission basis, but not predelivery inspection technicians like Osterman.

Last, Dietrich discusses the "labor billing segment" of a work order. (ECF

No. 23-1, PageID.246). His testimony makes clear that these "work order[s]"

reflect the work of predelivery inspection technicians like Osterman. (*Id.*) So,

Osterman's work orders included a "labor billing segment." The question is: to

whom is this labor billing segment billed? Earlier in his deposition, Dietrich

testified that General R.V. keeps a copy of all work orders, placing them in either

the "customer or the General R.V. file." (*Id.*). If the "labor billing segment" is

billed to someone or something other than the customer, why would these work

orders at least sometimes be placed in the customer file? Thus, these facts at least

*suggest* that General R.V. billed the customer for Osterman's labor. But they paint

a less than fulsome picture and simply are not enough—especially in light of the

Sixth Circuit's instruction that this court is to narrowly construe the affirmative

defense against the employer.

In arguing that General R.V.'s flat rate system constitutes a commission,

General R.V. relies on Dietrich's affidavit.[4] (ECF No. 20, PageID.202-203). In it,

Dietrich avers that "[t]he customer is charged the flat rate hour times a reasonable

rate determined by General R.V." (ECF No. 22, PageID.224). According to

Dietrich, the reasonable rate "includes the technician's compensation, overhead

---

[4] General R.V. asserts in its brief that it relied on Dietrich's affidavit because "[his]
deposition has not been received."

and allows for a reasonable profit to the company." (*Id.*)  Even assuming that the court can consider Dietrich's affidavit,[5] this statement, standing alone, is insufficient to satisfy the defendant's burden of proof; and as Dietrich admitted, "all prices are negotiable," (ECF No. 19-4, PageID.157), so it is unclear what effect the technician's compensation has on the overall sale price.  Besides, General R.V. implies in its opening brief that the content of Dietrich's affidavit is similar to that of his deposition testimony.  (ECF No. 20, PageID.202) ("As of the writing of this brief the transcript of Mr. Dietrich's deposition has not been received, therefore, the Defendant will reference his affidavit.").  But, as discussed above, Dietrich's deposition does not show the requisite proportionality.

General R.V.'s reliance on *Klinedinst*, *Yi*, *Herrera*, and *Whitt* does not save it.  (*Id.* at PageID.204).  Citing these cases, General R.V. argues that "the majority of courts have held that similar plans to General R.V. are a bona fide commission plan."  (*Id.*)  But this argument paints the holdings of these cases with too broad a brush.  As discussed above, each of these cases supports—or, at least, does not

---

[5] General R.V.'s motion for summary judgment includes an unsigned and unnotarized version of Dietrich's affidavit.  (ECF No. 20-2).  An unsigned and unnotarized affidavit is invalid.  *Cf. Abu-Joudeh v. Schneider*, No. 16-13893, 2019 WL 2219738, at *2 n.3 (E.D. Mich. Jan. 16, 2019), *adopted in part and rejected in part on other grounds*, 2019 WL 1090746 (E.D. Mich. Mar. 8, 2019) (holding the declaration was invalid because it was neither signed nor notarized). However, eleven days after General R.V. filed its opening brief, it filed a signed and notarized version of the same affidavit.  (ECF No. 22).  General R.V. cites the "corrected" version of the affidavit in its response to Osterman's motion for summary judgment.  (*See, e.g.*, ECF No. 25, PageID.268).  Regardless, the averments in Dietrich's affidavit is not enough to carry General R.V.'s burden of proof, for the reasons explained herein.

undermine—the proposition that there must be some proportionality between the employee's labor and the price paid by the customer.  And, as discussed above, each of these cases examined, in detail, the flat rate system at issue.  This court joins its sister courts in finding that it is possible for a flat rate system to constitute a commission—more specifically, where the requisite proportionality between employee compensation and customer price exists.  But, as explained above, General R.V. has not put forth sufficient evidence to show that its *particular* flat rate system reflects such proportionality.  Accordingly, it has failed to demonstrate that its compensation system is a commission within the meaning of Section 207(i) of the FLSA.

### E.    General R.V.'s Violation of the FLSA was Made in Bad Faith

Osterman argues that General R.V.'s violation of the overtime provisions of the FLSA was made in bad faith.  (ECF No. 19, PageID.127-128).  The court agrees.

An employee who establishes a violation of the FLSA is entitled to recover his actual damages and liquidated damages in an amount equal to his actual damages.  29 U.S.C. § 216(b).  Liquidated damages under the FLSA "are compensation, not a penalty or punishment."  *Elwell v. Univ. Hosp. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002).  Although liquidated damages are the norm and some circuits have even called them "mandatory," *see, e.g.*, *Martin v.*

*Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3rd Cir. 1991), Congress has

provided courts with some discretion to limit or deny liquidated damages.  *See* 29

U.S.C. § 260; *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004).

Under this exception, if an employer demonstrates both good faith and reasonable

grounds for believing that its conduct complied with the statute, then a court may

exercise its discretion to limit or deny liquidated damages.  *Martin*, 381 F.3d at

584; *Elwell*, 276 F.3d at 840.  But, "[t]his burden on the employer is substantial,"

*Elwell*, 276 F.3d at 840, and if the employer fails to carry it, the court may not limit

or deny liquidated damages.  *Id.* at 840; *Martin*, 381 F.3d at 584.  To prove that it

acted in good faith, an employer "must show that [it] took affirmative steps to

ascertain the Act's requirements, but nonetheless violated its provisions."  *Martin*,

381 F.3d at 584 (quoting *Cooper Elec. Supply Co.*, 940 F.2d at 908).

　　　General R.V.'s actions do not meet the "substantial" burden for denying

Osterman liquidated damages.  It is true that Dietrich stated in his deposition that

he implemented the flat rate system company-wide in 1997—23 years ago.  (ECF

No. 23-1, PageID.248).  And, to his knowledge, neither the Department of Labor

nor any other agency has investigated the technician's pay scheme.  (*Id.*)  He also

testified that it is his understanding that the flat rate system is utilized throughout

the industry.  (*Id.* at PageID.249).  But, as Osterman points out, this is not enough.

(ECF No. 19, PageID.128).  "[I[t is well established that 'simple conformity with

industry-wide practice fails to demonstrate good faith under the FLSA.'"  *Hollis v.*

*Dump Cable, Inc.*, No. 1:13-cv-01077, 2014 WL 12526724, at *10 (W.D. Tenn.

June 23, 2014) (quoting *Reich v. S. New England Telecom. Corp.*, 121 F.3d 58, 71

(2d. Cir. 1997)); *see also Cooper Elec. Supply Co.*, 940 F.2d at 910 ("good faith

cannot be established merely by conforming with industry standards").  And, the

fact that DOL never came after General R.V. is also insufficient.  *Hollis*, 2014 WL

12526724, at *10 ("[T]o meet the good-faith standard, Defendant must show that it

took some active steps to ascertain its compliance (or not).  It cannot merely rely

on the inaction of the Department of Labor.").  Because General R.V., by all

appearances, did not take any affirmative steps to ascertain the requirements of the

FLSA, its violation of the FLSA was made in bad faith.  Osterman is entitled to

recover both his actual damages and liquidated damages in an amount equal to his

actual damages.

### F.    General R.V.'s Violation of the FLSA Was Not Willful

Osterman argues that General R.V.'s violation of the FLSA was willful

because Dietrich disregarded the section of the employee handbook providing that

"non-exempt" employees like Osterman are entitled to overtime pay and that

Dietrich failed to conduct any research or consult with an attorney as to whether

the flat rate system complied with the requirements of the FLSA.  (ECF No. 19,

PageID.128–30).  The court disagrees that General R.V.'s violation was willful.

FLSA claims are generally subject to a two-year statute of limitations.  But, when the employer's violation is willful, the statute of limitations is extended to three years.  29 U.S.C. § 255(a).  To prove an employer's conduct was willful, a plaintiff must show "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "Reckless disregard of the requirements of the [FLSA] means failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]," and "[a]ll of the facts and circumstances surrounding the violation are taken into account in determining whether a violation was willful."  5 C.F.R. § 551.104.  "[M]ere negligence by the employer is not sufficient to permit a finding of willfulness."  *Elwell*, 276 F.3d at 841 n.5.

Courts have found willfulness in situations where the defendant had previous Department of Labor investigations regarding overtime violations, prior agreements to pay unpaid overtime wages, and assurances of future compliance. *Abadeer v. Tyson Foods, Inc.*, 975 F. Supp. 2d 890, 911 (M.D. Tenn. 2013). Courts have also found willfulness in situations "in which the employer deliberately chose to avoid researching the laws' terms or affirmatively evading them."  *Cook v. Carestar, Inc.*, No. 2:11-CV-00691, 2013 WL 5477148, at *13 (S.D. Ohio Sept.13, 2013).

In *Thomas v. Doan Const. Co.*, No. 13-11853, 2014 WL 1405222, at *14 (E.D. Mich. Apr. 11, 2014), the plaintiff made an argument similar to Osterman's here. The *Thomas* court found that the employee failed to show willfulness because "she has not brought forth any evidence that Defendant had any prior violations of the FLSA or that she ever complained to Defendant about overtime or not being compensated for overtime." *Id.* The same is true here. Osterman has not demonstrated that General R.V. had any prior violations of the FLSA in the 23 years since it rolled out the flat rate system. Nor is there any evidence that he complained to General R.V. about not being paid for overtime work in the four years that he worked for them. Accordingly, any violation by General R.V. was not willful. Therefore, the appropriate statute of limitations in this matter is two years.

## IV.  MOTION TO STRIKE

As noted above, Osterman seeks to strike ECF Nos. 24, 25, and 26 due to untimely filing. (ECF No. 28). These filings are General R.V.'s counter-statement of disputed facts, response brief to Osterman's partial motion for summary judgment, and a statement of undisputed facts (to which General R.V. attaches a second affidavit of Dietrich that is signed). (*See generally* ECF Nos. 24–26). For the reasons set forth below, the court **DENIES** Osterman's motion to strike.

## A.    Motion to Strike Standard

If a party misses a deadline due to "excusable neglect," Rule 6(b) permits the district court to extend the deadline on motion by the late party. Fed. R. Civ. P. 6(b)(1)(B).[6] "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 392 (1993). To determine whether a failure to file a response within the allotted time constitutes excusable neglect, a court weighs the following factors: (1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the late-filing party, and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). The court

---

[6] Rule 6(b)(1)(A) permits the court to act with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires. But, because the response was due in October 2019, this provision is not applicable here.

should "tak[e] account of all relevant circumstances surrounding the party's

omission." *Pioneer,* 507 U.S. at 395.

### B.  Analysis

In essence, Osterman argues that his motion to strike should be granted

because General R.V. declined to request an extension and has failed throughout

this matter to abide by court deadlines.  (ECF No. 28, PageID.300–301).  For its

part, General R.V. contends that its response was only two pages in length and was

filed only seven days late.  (ECF No. 30, PageID.316).  Besides, it says, it was

Osterman who engaged in dodgy litigation practices.  (*Id.* at PageID.308).

First, the danger of prejudice to Osterman is small, as the response is four

pages in length and essentially restates the same arguments that General R.V. laid

out in its motion for summary judgment.  (Factor 1).  Second, the length of the

delay was minor (seven days) and consideration of these filings makes no

difference in the court's ruling on the cross-motions for summary judgment.

(Factor 2).  It is true that General R.V.'s reason for the delay—inadvertence (ECF

No. 30, PageID.308)—was within its control.  (Factors 3 and 4).  These factors

weigh against General R.V.  And Factor 5 is neutral—both Osterman and General

R.V. are guilty of violating litigation etiquette.  (*See* ECF No. 15).  The court finds,

given the minimal amount of prejudice to Osterman, that these factors weigh in

favor of General R.V., despite its failure to file for an extension due to "excusable neglect."  As a result, the court **DENIES** Osterman's motion to strike.

## V.      CONCLUSION

For the foregoing reasons, Osterman's partial motion for summary judgment (ECF No. 19) is **GRANTED**, General R.V.'s motion for summary judgment (ECF No. 20) is **DENIED**, and Osterman's motion to strike (ECF No. 28) is **DENIED**.

**IT IS SO ORDERED**.

Dated: November 16, 2020                    s/Stephanie Dawkins Davis
                                            Stephanie Dawkins Davis
                                            United States District Judge